## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

**ANGELA MALUSKY,**                       :

       **Plaintiff**                     :

                               **CIVIL ACTION NO. 3:24-CV-466**

                              :

  **v.**

                              :        **(JUDGE MANNION)**

**SCHUYLKILL COUNTY and**
**MARIA CASEY,**                          :

       **Defendants**                  :

## MEMORANDUM

Plaintiff Angela Malusky claims that her former employers, Defendant Schuylkill County (the "County") and Defendant Maria Casey ("Casey"), violated her Fourteenth Amendment right to due process. She also claims that Defendants discriminated and retaliated against her on the basis of disability in violation of the Americans with Disabilities Act (the "ADA"). Finally, she claims that Defendants failed to pay her wages in violation of the Fair Labor Standards Act (the "FLSA"), Pennsylvania's Wage Payment and Collection Law (the "WPCL"), and the Pennsylvania Minimum Wage Act (the "PMWA"). Defendants move to dismiss Plaintiff's Amended Complaint (the "Complaint"). (Doc. 14; Doc. 15).

## I.   BACKGROUND

Because these are motions to dismiss, the court accepts the Complaint's factual allegations as true. *Bruni v. City of Pittsburgh*, 824 F.3d 353, 360 (3d Cir. 2016).

Plaintiff worked at the County's Clerk of Court Office. (Doc. 13 ¶10). As of 2022, she was in a Clerk III position, in which she earned $23.50 an hour and typically worked 35 hours a week. (Id. ¶¶26, 215). When she worked there, Plaintiff suffered from "mental impairments, including but not limited to anxiety, depression, and high blood pressure." (Id. ¶50).

In 2016, Defendant Casey started as Clerk of Courts, an elected position. (Id. ¶24). Casey directly supervised Crista DiCasimirro, who directly supervised Plaintiff. (Id. ¶32). Casey assigned "additional duties" to Plaintiff, such as picking up dinners for Casey and delivering them to her home, driving Casey around to deliver holiday meals to the needy, driving Casey to and from work, packing gift baskets for Casey's political supporters, and driving Casey to political dinners. (Id. ¶57). Plaintiff did not volunteer for these duties, but they were "commonplace" in the Clerk of Courts office among many of the employees. (Id. ¶220–22). On average, Plaintiff performed two to three additional duties a month, ranging in time from 15 minutes to 8 hours. (Id. ¶260). And some duties occurred outside standard

work hours. (Id. ¶217). For instance, Plaintiff once had to drive Casey to political dinners to help her collect signatures for her campaign for over six hours after working her standard 35 hours that week. (Id. ¶218). But Plaintiff was prohibited from entering the time spent performing these duties on her time sheet. (Id. ¶225).

The additional duties "often intertwined" with Plaintiff's Clerk III duties. (Id. ¶262). For example, Plaintiff was once required to pick up Casey at her home before work and drive her to a junkyard so that Casey could retrieve items from her vehicle there. (Id. ¶263). She then had to leave work during the day so that she could drive Casey home, and Casey required Plaintiff to deliver her dinner after work. (Id. ¶¶265–65).

These additional duties caused Plaintiff's impairments to intensify, so she requested various medical leaves of absence. (Id. ¶59). In March 2022, she informed Casey of her diagnosis of anxiety and depression, explained that the additional duties contributed to the impairments, and requested that her additional duties be eliminated. (Id. ¶¶60–61). But Casey ignored these requests. (Id. ¶63). And "Defendants made it clear that the job description written and distributed by Schuylkill County contained a clause allowing for any other duties assigned." (Id. ¶224).

At a medical appointment in August 2021, her doctor called an ambulance due to high blood pressure. (Id. ¶174). While waiting for the ambulance, Plaintiff informed Defendants that she would not be returning to work that day. (Id. ¶175). When she returned to work, Plaintiff "suffered discriminatory comments from co-workers about her absence." (Id. ¶176). These comments were made in front of DiCasimirro. (Id. ¶177). Further, "non-disabled employees similarly situated to Plaintiff who have requested accommodations similar to those requested by Plaintiff," such as intermittent medical leaves, "were not terminated from employment." (Id. ¶¶180, 187).

On July 16, 2022, Plaintiff tested positive for COVID-19. (Id. ¶64). The CDC advised, and the County required, a five-day quarantine. (Id. ¶¶65–66). So Plaintiff coordinated medical leave, (id. ¶67), which was approved by the County's human resource department. (Id. ¶68). But when Plaintiff returned to work on July 22nd, (id. ¶71), Casey terminated Plaintiff and refused to rehire her in another office. (Id. ¶¶71, 183).

Plaintiff's termination notice, (Ex. B) (Doc. 13 at 59–60), which was written by Casey, (Doc. 13 ¶114), listed several reasons for the discharge. These included habitually showing up late, falsifying a time sheet, refusing to work the service counter, leaving work without explanation, unexcused absences, "abuse of the personal time policy," mishandling court filings, and

neglecting court filings and matters. (Id. at 59–60). These offenses ranged from mid-2017 to mid-2022. (Id.). Plaintiff avers that many of these offenses are false, misrepresentative, "pretextual," or a result of the additional duties assigned by Casey interrupting her Clerk III duties. (Id. ¶¶82-85).

As to the last point, for instance, in March 2022, Casey told Plaintiff to take her home from work before the end of the work day. (Id. ¶86). Plaintiff protested because she had not yet finished her Clerk III duties, but Casey repeated the demand and told her not to worry about the Clerk III duties. (Id. ¶87–88). Plaintiff complied, (id. ¶89), but the following day, DiCasimirro confronted her about the unexcused absence, (id. ¶90), and suspended Plaintiff for three days though Plaintiff told her the reason she left. (Id. ¶91).

Additionally, when Plaintiff attempted to enter the time required to perform the additional duties on her time sheet, DiCasimirro would remove the time. (Id. ¶226). For instance, in June 2022, Plaintiff arrived to work 90 minutes late after performing one of her additional duties, (id. ¶274), and when she reported these 90 minutes on her time sheet, (id. ¶275), DiCasimirro accused her of falsifying her time. (Id. ¶276).

After giving notice of termination, Casey pressured Plaintiff to provide a resignation letter in lieu of termination. (Doc. 13 ¶74), and Plaintiff did so involuntarily, (Doc. 13 ¶75; Doc. 13 at 62 (Ex. C)). The letter cited her health

as the reason for leaving employment. (Doc. 13 ¶76; Doc. 13 at 62). Plaintiff also contacted County Human Resources to ask about filing a complaint of discrimination and harassment based on her disability. (Id. ¶77). And since the termination notice stated, "If you wish, you will be afforded a Loudermill hearing," (Doc. 13 at 60), Plaintiff informed the County that she wanted the hearing, but Human Resources told her that she had surrendered her right to a hearing. (Id. ¶117). Plaintiff was replaced by "an individual who is not within Plaintiff's protected class." (Id. ¶186).

## II.    LEGAL STANDARD

In response to a complaint, a party may move for dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive dismissal, a complaint must make more than "conclusory or 'bare-bones' allegations," and "'threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Instead, the complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

When considering the complaint, the court applies a "two-part analysis." *Id*. "First," the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id*. at 210–11. "Second," the court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim to relief." *Id*. at 211. In determining the sufficiency of the facts alleged, the court must "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

## III.   DISCUSSION

### A. Count I: Fourteenth Amendment – Due Process of Law

Plaintiff claims that Defendants violated her Fourteenth Amendment right to due process by terminating her without notice or the opportunity for a hearing. (Doc. 24 at 13). The Fourteenth Amendment provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The first step in analyzing a due process claim is to determine whether the 'asserted individual interest … [is] encompassed within the [F]ourteenth [A]mendment's protection of life,

liberty, or property.'" *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)). Plaintiff contends that she had a property interest in her employment, and that Defendants deprived her of this interest. (Doc. 24 at 14). Defendants argue that Plaintiff did not have a property interest. (Doc. 16 at 11–13).

Plaintiff alleges that she "possessed a property interest in her Clerk III position because she could only be terminated from her position for cause." (Doc. 13 ¶105). "[S]tate law determines whether … a property interest exists." *Elmore*, 399 F.3d at 282. Under Pennsylvania law, a "public employee does not have any property interest in her employment within the meaning of the Fourteenth Amendment because [she] serves solely at the pleasure of her public employer, and can be dismissed for any legal reason or for no reason at all." *Miller v. Clinton County*, 544 F.3d 542, 552 (3d Cir. 2008). "[A] local government in Pennsylvania cannot provide its employees with tenure status unless there exists express legislative authority to do so." *Elmore*, 399 F.3d at 282–83. So absent express legislative authority, public employment is at-will and "[a]ny attempt by a municipality to alter an employee's status without enabling legislation … has no legal effect." *Id.* at 282.

Plaintiff does not allege that the County had express legislative authority to provide her with a property interest. She argues that her property right arose from a unilateral contract, (Doc. 20 at 15), since (1) her termination "allege[d] specific acts as the causal basis for termination," and (2) "Casey held out to Plaintiff that she could only be terminated for cause by stating, 'If you wish, you will be afforded a Loudermill[1] hearing.'" (Id. ¶¶106–107). She also attempts to resist *Elmore* by citing the Pennsylvania Superior Court's holding that "the communication to employees of certain rights, policies and procedures may constitute an offer of an employment contract with those terms." *Hicks v. Glob. Data Consultants, LLC*, 288 A.3d 875, 883 (Pa. Super. Ct. 2022) (quoting *Evans v. Cap. Blue Cross*, 269 A.3d 569, 575 (Pa. Super. Ct. 2022). (Doc. 20 at 15).

But *Hicks* does not contradict *Elmore*, as Plaintiff suggests, for that case involved a private employer, and did not involve a due process claim. *Id.* at 878–79, 881. Absent legislative authority, Defendants could not have given Plaintiff protected status. So Plaintiff's allegation that she could only be terminated for cause is unavailing.

---

[1] The term "Loudermill hearing" refers to *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985), where the Court held that certain public sector employees can have a property interest in their employment, and in such cases, employees who receive a notice of termination are entitled to a hearing to present their side of the events resulting in the termination.

As Plaintiff does not allege facts demonstrating that her employment was not at-will, she has not plead that she had a property interest in her employment. So she has stated no Fourteenth Amendment due process claim. Count I will therefore be dismissed.

### B. Count II: Disability Discrimination – Failure to Accommodate

Plaintiff next claims that the County violated the ADA by refusing her request for accommodations. (Doc. 13 ¶¶122–140). Under the ADA, "no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, or privileges of employment." 42 U.S.C. § 12112(a). A "qualified individual with a disability" is someone "who, with or without reasonable accommodation, can perform the essential functions of the employment position that individual holds or desires." 42 U.S.C. § 12111(8).

Discrimination occurs when an employer does "not mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual … unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A). Reasonable accommodations

include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, … and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9).

"A plaintiff bringing an ADA failure-to-accommodate claim must establish that: '(1) [s]he was disabled and [her] employer knew about it; (2) [s]he requested an accommodation or assistance; (3) [her] employer did not make a good faith effort to assist; and (4) [she] could have been reasonably accommodated." *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 157 (3d Cir. 2017) (quoting *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006)).

Plaintiff asserts that the County violated the ADA "by refusing to grant and/or implement Plaintiff's requests for reasonable accommodations in the form of eliminating the Additional Duties" assigned by Casey, (Doc. 13 ¶133), and by "refus[ing] to engage in the interactive process to explore reasonable accommodations that would have permitted Plaintiff to perform the essential functions of her job." (Id. ¶134). The County contends that the additional duties were essential conditions of her employment. (Doc. 19 at 16–19). It also submits that the proposed accommodation—eliminating the additional duties—was not reasonable. (Id. at 19–21). Finally, it asserts that it provided

a reasonable accommodation—medical leave—in place of eliminating the additional duties. (Id. at 21–22).

The court addresses the County's arguments below.

### a. The County's argument that the additional duties were essential functions of the Clerk III position

A "reasonable accommodation" may include "job restructuring." 42 U.S.C. § 12111(9). "An employer may be required to restructure a job by reallocating or redistributing nonessential, marginal job functions; however, the employer is not required to reallocate essential functions." 29 C.F.R. pt. 1630, app. 1630.2(o). In other words, "employers are not required to accommodate an employee by removing an essential function or restructuring a job as to avoid it, but, rather, they are to provide an accommodation so as to enable the employee to perform such a function. *Skerski v. Time Warner Cable Co.*, 257 F.3d 273, 285 n.4 (3d Cir. 2001).

"The term essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires," but not "the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1). "The function may be essential because the reason the position exists is to perform that function," because "of the limited number of employees available among whom the performance of that job function can be distributed," or because "[t]he function may be highly specialized so that the

incumbent in the position is hired for his or her expertise or ability to perform the particular function." 29 C.F.R. § 1630.2(n)(2). Further, "[e]vidence of whether a particular function is essential includes, but is not limited to":

> (i) [t]he employer's judgment as to which functions are essential; (ii) [w]ritten job descriptions prepared before advertising or interviewing applicants for the jobs; (iii) [t]he amount of time spent on the job performing the function; (iv) [t]he consequences of not requiring the incumbent to perform the function; (v) [t]he terms of a collective bargaining agreement; (vi) [t]he work experience of past incumbents on the job; and/or (iv) [t]he current work experience of incumbents in similar jobs.

29 C.F.R. § 1630(n)(2)(3). This list of "factors for consideration" is "non-exhaustive." *Skerski*, 257 F.3d at 279.

The County argues that the additional duties were not essential functions. It asserts that: "Based on Plaintiff's allegations, there is no difference between the 'essential duties' that she alleges she is able to perform, and the 'additional duties' that Casey requested her to perform." (Doc. 19 at 18). The County points out Plaintiff's allegations that many employees in the Clerk office were also required to perform these duties, such that a reasonable employee would believe that they were "the types of services a clerk was employed to perform," and that Plaintiff's supervisors indicated to her that the additional duties were part of her job description. (Id.). Plaintiff argues that the additional duties were not essential, because the County controlled the essential duties while Casey controlled the

additional duties, and because the additional duties were often performed outside work hours. (Doc. 24 at 18).

The court concludes that the additional duties, as alleged, were not essential. Plaintiff was not compensated for performing the additional duties like she was for the other functions. Indeed, she was disciplined for performing them in place of other functions. This distinction suggests that the additional duties were not essential, but were instead of a lower priority than Plaintiff's clerk duties. Further, several considerations listed in the regulations—that performance of the additional duties could be distributed to more than just a limited number of employees, and that the additional duties did not require specialized expertise that Plaintiff was specifically hired to provide—suggest that the additional duties were not essential functions. Finally, the additional duties were not specified in the job description, but were instead encompassed by a catch-all clause.

Plaintiff was not compensated for the extra hours she worked on additional duties, (Doc. 24 ¶219), and she was prohibited from entering those hours on her time sheet. (Id. ¶225). When she attempted to enter the time, DiCasimirro would remove it. (Id. ¶226). If the additional duties were "essential" to Plaintiff's position, 29 C.F.R. § 1630.2(n)(1), she would have been compensated for them just as she was for her other duties. Plaintiff

also faced disciplinary action completing the additional duties *in place of* the essential functions. For instance, in March 2022, Casey told Plaintiff to take her home before the end of the work day. (Id. ¶86).   Plaintiff protested because she had not yet finished her Clerk III duties, but Casey repeated the demand and told her not to worry. (Id. ¶87–88). Plaintiff complied, (id. ¶89), but on the following day, DiCasimirro confronted her about the unexcused absence, (Id. ¶90), and suspended Plaintiff for three days even after Plaintiff told her the reason she left. (Id. ¶91). Presumably, if the additional duties were "essential" to the job, 29 C.F.R. § 1630.2(n)(1), Plaintiff would not have been disciplined for performing them when one of her supervisors instructed her to do so.

Application of the regulations also suggests that the additional duties were not essential. Plaintiff alleges that there was not a "limited number of employees available among whom the performance of the [additional duties] could be distributed," 29 C.F.R. § 1630.2(n)(2), because "[m]any of the employees in the clerk of courts office were required to perform Additional Duties for Casey from time to time," (Doc. 13 ¶220), and "[b]eing asked to perform Additional Duties was commonplace in the Clerk of Courts office." (Id. ¶221). These allegations indicate that the additional duties could have and already were distributed among several other employees. Plaintiff also

alleges that the additional duties were not "highly specialized" such that Plaintiff was "hired for her expertise or ability to perform" them, 29 C.F.R. § 1630.2(n)(2), which allegation is supported by the nature of the alleged additional duties: they consisted of everyday tasks like driving Casey to and from work and packing gift baskets. (Doc. 13 ¶57).

On the other hand, weight is afforded to "[t]he employer's judgment as to which functions are essential" as well as to "[w]ritten job descriptions prepared before advertising or interviewing applicants for the jobs." 29 C.F.R. § 1630.2(n)(3). As Plaintiff alleges, "Defendants made it clear that the job description written and distributed by Schuylkill County contained a clause allowing for any other duties assigned." (Doc. 13 ¶224). And of course, Defendant now submits that these duties were essential. (Doc. 19 at 18). With regard to the job description, though, Defendant does not contradict Plaintiff's allegation that the additional duties were asserted to be covered by the "clause allowing for any other duties assigned." (Doc. 19 at 18 (citing Doc. 13 ¶224)). This catch-all phrase gives no indication that the specific additional duties challenged here were essential, so this factor does not weigh in the County's favor.

On balance, these considerations weigh in favor of concluding that the additional duties, as alleged, were not essential functions.

**b. The County's comparison of Plaintiff's requested accommodation to the unreasonable accommodation request in *Gaul***

The County also analogizes this case to *Gaul v. Lucent Techs., Inc.*, where the Third Circuit found that a plaintiff's request "to be transferred away from individuals causing him prolonged and inordinate stress was unreasonable as a matter of law under the ADA." 134 F.3d 576, 579 (3d Cir. 1998). It reasoned that: (1) "compliance" with the accommodation "depend[ed] entirely on Gaul's stress level at any time"; (2) "the term 'prolonged and inordinate stress' [was] not only subject to constant change, it [was] also subject to tremendous abuse" because "the only certainty for [the employer] [was] its obligation to transfer Gaul to another department whenever he [became] 'stressed out'"; (3) the administrative burdens posed "[required] far too much oversight and [were] simply not required under law"; and (4) "Gaul [was] essentially asking this court to establish the conditions of his employment." *Id.* at 580–81.

These considerations do not apply to Plaintiff's requested accommodation. Plaintiff simply requested to be relieved of additional duties. This request does not, like that in *Gaul*, depend on her stress level or impose a constantly changing standard. Plus, there is little indication that Plaintiff's requested accommodation would pose an undue administrative burden.

Neither did Plaintiff's request amount to asking to establish the conditions of her employment. *See id.* at 581 (quoting *Weiler v. Household Fin. Corp.*, 1010 F.3d 519, 526 (7th Cir. 1996)). This type of accommodation would not require "interfer[ing] with personnel decisions within an organizational hierarchy," as Gaul's did. *Id.* (quoting *Wernick v. Federal Reserve Bank of N.Y.*, 91 F.3d 379, 384 (2d Cir. 1996)).

### c. The County's argument that it offered medical leave as an alternative accommodation to eliminating the additional duties

The County next observes that "an employee cannot make his employer provide a specific accommodation if another reasonable accommodation is instead provided." *Solomon v. Sch. Dist. of Phila.*, 882 F. Supp. 2d 766, 779 (E.D. Pa. 2012) (citing *Hankins v. The Gap, Inc.*, 84 F.3d 797, 800–01 (6th Cir. 1996)). In other words, the employer may "choose between effective accommodations, and may choose the less expensive accommodation or the accommodation that is easier for it to provide." *Solomon*, 882 F.Supp.2d at 779 (citing 29 C.F.R. pt. 1630, app. § 1630.9(a)). "The employer must show … that the proposed accommodation was not reasonable or would have caused it undue hardship, or that the employer proposed a reasonable accommodation that the plaintiff rejected." *Id.*

Although the County posits that Plaintiff's medical leave constitutes a reasonable alternative accommodation, (Doc. 19 at 22), Plaintiff's allegation is that she requested duty-elimination in addition to the medical leave, not that she rejected medical leave in favor of eliminating the additional duties. (Doc. 13 ¶61), suggesting that medical leave alone was insufficient to allow her to perform her essential duties. So the County's argument regarding medical leave is unavailing.

The court concludes that Plaintiff's requested accommodation, as alleged, was reasonable.

*** 

As a last effort to dismiss Plaintiff's Count II, the County argues that Count II should be dismissed as redundant. (Doc. 19 at 24). It contends that Count II and Count III both arise out of the same allegations, and "a claim that an employer failed to accommodate an employee's disability is best viewed not as an independent claim under the ADA, but as a theory that may support a discrimination claim, with disparate treatment representing another possible theory." (Id. (citing *Solomon*, 882 F.Supp.2d at 776)).

Even assuming that redundancy were an appropriate basis for dismissal under Rule 12(b)(6), *cf. Crighton v. Schuylkill Cnty.*, 882 F. Supp 411, 415 (E.D. Pa. 1995) ("Motions to dismiss pursuant to Rule 12(b)(6) test

the validity of the complaint. A claim that is redundant is not necessarily invalid."), the court is not convinced that Counts II and III are redundant. Plaintiff alleges facts to support Count II that are separate than the facts she alleges to support Count III. Count II is based on the allegation that Defendant unlawfully refused to relieve Plaintiff of the additional duties, while Count III is based on the allegation that Defendant terminated Plaintiff because of her disability. Accordingly, Count II will not be dismissed on the basis of redundancy, either.

In sum, the court concludes that the accommodation requested by Plaintiff, as alleged, was reasonable. Plaintiff has also alleged that Defendants did not make a good faith effort to assist her. (See Doc. 13 ¶¶131–35). And Defendants do not dispute that Plaintiff has alleged that she was disabled and that they knew about her disability. So she has stated a failure-to-accommodate claim under the ADA, and Count II will not be dismissed.

## C.    Count III: Disability – Discrimination

To establish a prima facie case of disability discrimination under the ADA, a plaintiff must show that: (1) "[s]he is a disabled person within the meaning of the ADA; (2) [s]he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the

employer; (3) [s]he has suffered an otherwise adverse employment decision as a result of discrimination." *Gaul*, 134 F.3d at 580.

As to the third element, Plaintiff relies on conclusory allegations of discrimination. (Doc. 24 at 20–21 (citing Doc. 13 ¶¶158, 160, 183, 280, 281)). Although she has alleged that she suffered an adverse employment action—her termination, (Doc. 13 ¶¶91–93)—Plaintiff has not made factual allegations suggesting that this action was taken as a result of discrimination. Her references to the County's "discrimination" or description of her termination as "on account of her Disability," (id. ¶¶158, 160), do nothing to make plausible an inference that the County actually acted on the basis of disability. Neither does her allegation that the County "used [Plaintiff's] absences to justify" the adverse actions suggest that these actions were taken as a result of Plaintiff's disability.

Plaintiff also alleges that she was terminated because "Defendant knew or suspected that the seriousness of [her disability] might require future intermittent medical leaves of absence," and so the County "terminated [her] employment rather than accommodate future foreseeable requests for accommodations with intermittent medical leaves." (Doc. 13 ¶152). But these are just speculations unsupported by factual allegations. Plaintiff's other allegations of discrimination are similarly conclusory. For instance, she

alleges that Defendants' bases for terminating her were "a pretext for unlawful discrimination," (id. ¶154), without offering supporting factual allegations.

And although Plaintiff alleges that she faced "discriminatory comments" from her co-workers, (id. ¶176), she does not allege that these co-workers played a role in the decision to terminate her. She has not made factual allegations plausibly suggesting that the County took any adverse employment action "as a result of" discrimination. *Gaul*, 134 F.3d at 580. So Plaintiff has failed to state a claim for disability discrimination in connection with her termination, and Count III will be dismissed.

### D. Count IV: ADA Retaliation

The County does not move to dismiss Count IV. (Doc. 14 ¶6). So Count IV will not be dismissed.

### E. Count V: Failure to Pay Wages – FLSA (Counts V and VI)

Plaintiff next claims that Defendants violated the FLSA by failing to pay her minimum or overtime wages. (Doc. 13 ¶¶235, 238, 259).

*First*, the court agrees with Defendants that Plaintiff has stated no FLSA minimum wage claim. (Doc. 16 at 16–17; Doc. 19 at 27). The Act mandates that employees be paid a wage of $7.25 an hour. 29 U.S.C. §206(a)(1).  To state a claim under this provision, "a plaintiff must allege that

his/her average hourly wage falls below the federal minimum wage." *Nardelli v. Lamparski*, No. 2-20-CV-1723, 2023 WL 3901299, at *3 (W.D. Pa. June 8, 2023). So "pure gap time claims"—claims for unpaid non-overtime hours by employees whose average hourly rate exceeds the minimum wage—"are not cognizable under the FLSA." *Davis v. Abington Memorial Hosp.*, 765 F.3d 236, 244 (3d Cir. 2014).

Plaintiff alleges that she was paid $23.50 an hour and "typically worked 35 hours a week." (Doc. 13 ¶215). She does not allege that her average wage for any week fell below $7.25, and her complaint's allegations do not make such an inference plausible. So she has failed to state a claim for violation of the FLSA's minimum wage provision. Plaintiff appears to concede this much. (Doc. 24 at 24).

*Second*, Defendants contend that Plaintiff has not made sufficient factual allegations to state an FLSA overtime claim. (Doc. 16 at 14–16; Doc. 19 at 27). Where an employee works a workweek longer than 40 hours, she must be compensated "at a rate not less than one and one-half times the regular rate at which [s]he is employed." 29 U.S.C. §207(a).

"[T]o state a plausible FLSA overtime claim, a plaintiff must sufficiently allege forty hours of work in a *given* workweek *as well as* some uncompensated time in excess of the forty hours." *Davis*, 765 F.3d at 241–

42 (quoting *Lundy v. Catholic Health System of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013)). This pleading standard does not require that a plaintiff "identify the exact dates and times that she worked overtime"; rather, a "claim that she 'typically' worked forty hours per week, worked extra hours during such a forty-hour week, and was not compensated for extra hours beyond forty hours … she worked during one or more of *those* forty-hour weeks, would suffice." *Id.* at 243.

In support of her overtime claim, Plaintiff points to her allegation that she "drove Casey to political dinners and help[ed] her collect signatures for her campaign for over six hours after working 35 hours that week." (Doc. 13 ¶218; Doc. 20 at 17; Doc. 24 at 24). Defendants acknowledge that Plaintiff has alleged one workweek in which she worked 41 hours and was not compensated for the overtime hour. (Doc. 16 at 16; Doc. 19 at 25, 27). Under *Davis*, that is enough. *See* 765 F.3d at 243.

Casey also raises a statute of limitations defense. (Doc. 16 at 16). An FLSA overtime claim must be brought "within two years after the cause of action accrued," unless it arose out of a "willful violation," in which case it must be brought within three years. 29 U.S.C. §255(a). Because "Casey last ran for Clerk of Courts in 2019," she submits, and Plaintiff's action was commenced in 2024, an FLSA claim is outside the statute of limitations. (Doc

16 at 16). Plaintiff does not respond to this argument in her brief in opposition to Casey's motion. (Doc. 20 at 17).

A statute of limitations defense may "be raised by a motion under Rule 12(b)(6), but only if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *LabMD Inc. v. Boback*, 47 F.4th 164, 179 n.9 (3d Cir. 2022) (quoting *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002)). "If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Id.* (quoting *Robinson*, 313 F.3d at 135).

The statute of limitations bar is not apparent on the face of Plaintiff's complaint, because the Complaint does not indicate when Plaintiff's unpaid overtime occurred or when Casey last campaigned for Clerk of Courts. So Casey's statute of limitations defense may not afford the basis for dismissal of Plaintiff's FLSA claim under Rule 12(b)(6). Count V will therefore not be dismissed at this time.

*Third*, Plaintiff in County VI alternatively brings an FLSA minimum wage claim against Casey individually. (Doc. 13 ¶¶241–68). This claim is based on 29 U.S.C. §206(f), which requires the payment of minimum wages to those who are "employed in domestic services in a household." (Doc. 13

¶246). "Domestic service employment means services of a household nature performed by an employee in or about a private home (permanent or temporary)." 29 C.F.R. §552.3; *Madison v. Res. for Hum. Dev., Inc.*, 233 F.3d 175, 181 (3d Cir. 2000) ("We agree with the District Court's reliance on 29 C.F.R. §552.3 to determine the meaning of 'domestic service.'").

In opposition to Casey's motion to dismiss Count VI, Plaintiff relies on her allegations that she acted as a "chauffeur" and performed other tasks "of a household nature" for Casey, such as packing donation baskets in connection with campaign events.  (Doc. 20 at 18 (citing Doc. 13 ¶¶57, 249–50, 263–65, 332)).  Plaintiff asserts that chauffeur work is "specifically listed in 29 U.S.C. §206(f)," (id.); it is not. But it is listed in a regulation defining "domestic service employment." 29 C.F.R. §552.3.

Again, section 206(f) applies to "domestic service in a household." 29 U.S.C. §206(f). And the regulations limit "domestic service employment" to those services "of a household nature" which are performed "in or about a private home (permanent or temporary)." 29 C.F.R. §552.3.

Casey argues that Plaintiff "does not allege that she performed services in or about Casey's home or in a domestic service capacity." (Doc. 16 at 19). There is no allegation that Plaintiff performed services *in* Casey's home. But there are allegations that she was required to "pick[] up dinners

for Casey after work hours and deliver[] [them] to her home," "pick[] Casey up from her home to take her to work," and "tak[e] Casey home from work." (Doc. 13 ¶57).

Among the illustrative examples of "domestic services employment," 29 U.S.C. §552.3 includes "services performed by employees such as … chauffeurs of automobiles for family use." Casey urges the court to ignore the "chauffeur" label used by Plaintiff, and instead recognize that the alleged context of Plaintiff's driving duties was "transportation to or from work, and political or campaign-related activities." (Doc. 16 at 18).

Plaintiff's allegations do not match §552.3's example. The alleged "chauffeur" duties here—food delivery and transportation to and from work—do not constitute services for "family use" or "services of a household nature." *See* 29 U.S.C. §552.3. These types of services are not particular to families or households but are instead commonly performed by independent contractors unconnected to, and outside of, individual households. Neither is packing donation baskets work of a household nature.

The court concludes that Plaintiff has not alleged that she was employed by Casey "in domestic service in a household." 29 U.S.C. §206(f)(1). Count VI, which is based on §206(f), (Doc 13 ¶246), will therefore be dismissed.

### F. Count VII: Retaliation – FLSA

Plaintiff also brings a claim of retaliation under the FLSA. (Doc. 1 ¶¶269–87). The FLSA makes it unlawful "to discharge or in any other manner discriminate against an employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [Chapter 8 of Title 29]." 29 U.S.C. §215(a)(4). An oral complaint may suffice for purposes of this provision, *Kasten v. Saint Gobain Performance Plastics Corp.*, 563 U.S. 1, 17 (2011), but any "complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Id.* at 14.

Defendants argue that Plaintiff has not alleged that she engaged in protected activity under the FLSA. (Doc. 16 at 20–22; Doc. 19 at 29). Plaintiff relies on her allegations that she "attempted to obtain payment for the Additional Duties she performed by reporting this time on her Schuylkill time sheet" and "[l]ater, … filed an oral complaint to Dicasimirro after DiCasimirro accused Plaintiff of falsifying her timesheet." (Doc. 13 ¶¶275–76). She alleges that her oral complaint "constitutes protected activity under the FLSA." (Id. ¶279).

Plaintiff's allegation of an "oral complaint" alone cannot amount to a protected activity, because it does not contain any indication that the complaint was about an asserted violation of the FLSA. And read in context, the thrust of this alleged complaint was that Plaintiff should have been paid for the time spent performing the additional duties. But the FLSA only guarantees a minimum wage and time-and-a-half for overtime hours. A complaint that certain hours went unpaid does not itself constitute an FLSA claim unless it is also asserted that the employee's average wage fell below the minimum wage or that she worked overtime hours without time-and-a-half pay. *See Davis*, 765 F.3d at 244. So Plaintiff's factual allegations regarding her oral complaint do not make plausible an inference that such complaint would reasonably have been understood as an FLSA complaint. She has therefore not alleged that she engaged in protected activity. Accordingly, Count VII will be dismissed.

### G. Count VIII: Failure to Pay Wages – WPCL

Plaintiff next brings a claim under the Pennsylvania Wage Payment and Collection Law, 43 Pa. Stat. §§260.1–260.45. (Doc. 13 ¶¶288–320). The WPCL provides that "[e]very employer shall pay all wages, other than fringe benefits and wage supplements, due to his employees on regular paydays designated in advance by the employer." 43 Pa. Stat. §260.3(a). "Employer,"

as used in the WPCL, "[i]ncludes every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth."  §260.2a.

Defendants argue that the WPCL does not apply to them: the County because its definition of employer "does not include municipal corporations." (Doc. 19 at 30), and Casey because the definition "does not include elected officials." (Doc. 16 at 23).

As the parties point out, (Doc. 24 at 26–28; Doc. 19 at 30; Doc. 28 at 14–16), there is some division as to whether the WPCL's definition of "employer" includes municipal corporations. *Compare Paparo v. Borough of Yeadon*, No. 22-841, 2024 WL 406753, at **11–12 (E.D. Pa. Feb. 2, 2024), *with Carstetter v. Adams Cnty. Transit Auth.*, No. 1:06-cv-1993, 2008 WL 2704596, at *14 (M.D. Pa. July 8, 2008); *Porter ex rel. Philipsburg-Osceola Educ. Ass'n v. Philipsburg-Osceola Sch. Dist.*, 633 A.2d 220, 223 (Pa. Commw. Ct. 1993); *and Huffman v. Borough of Millvale,* 591 A.2d 1137, 1139 (Pa. Commw. Ct. 1991). But the County is not a municipal corporation. *Chester Cnty. v. Phila. Elec. Co.*, 218 A.2d 331, 425 (Pa. 1966) ("The County is merely a political subdivision of the Commonwealth; not a municipal

corporation."). So the inclusion of "corporation[s]" in the definition of "employer" does not cover the County.

Nor, for that matter, does the inclusion of "every person." The word "person" used in a Pennsylvania statute enacted after 1937 "includes … a government entity (other than the Commonwealth)," "unless the context clearly indicates otherwise." 1 Pa. Cons. Stat. §1991. Here, the statute includes "every person," but it also specifically includes "officer[s] of a court of this Commonwealth." 43 Pa. Stat. §260.3a.   The statute's specific inclusion of a particular governmental entity makes clear that the General Assembly did not intend to also include all other governmental entities within the statute's use of the word "person."   *Cf. Morrow v. Cnty. of Montgomery, Pa.*, No. 13-1032, 2014 WL 348625, at **2–3 (E.D. Pa. Jan. 31, 2014) ("While no court has directly ruled on the applicability of the [Pennsylvania Minimum Wage Act] to government entities, decisions on [the] analogous [WPCL] make clear that where the legislature has omitted government entities from coverage in the language of the statute, courts should not read the statute to include these entities." (first citing *Phillipsburg-Osceola*, 633 A.2d at 223, and then citing *Huffman*, 591 A.2d at 1138–39)); *see also Mimi Investors, LLC v. Tufano*, 297 A.3d 1272, 1286 n.21 (Pa. 2023) ("[U]nder the doctrine of expression unius est exclusion alterius, the inclusion of a specific matter in

a statute implies the exclusion of other matters."). The court therefore concludes that the WPCL does not cover the County, and so Plaintiff has stated no WPCL claim against the County.

That leaves Plaintiff's WPCL claim against Casey. Plaintiff has alleged that Casey was the Clerk of Courts. (Doc. 13 ¶24). "The office of the clerk of the courts shall have the power and duty to … [e]xercise the authority of the clerk of the courts as an officer of the court." 42 Pa. Cons. Stat. §2757(4). And term "employer," as used in the WPCL, includes "every … officer of a court of this Commonwealth," 43 Pa. Stat. §260.2a, so the WPCL applies to Casey.

Still, "[t]he WPCL does not create a right to compensation; it provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages." *Oxner v. Cliveden Nursing & Rehab. Ctr.*, 132 F. Supp. 3d 645, 649 (E.D. Pa. 2015) (citing *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir. 2003)). "Where an employee does not work under a written employment contract or collective bargaining agreement, the employee will have to establish the formation of an implied oral contract to recover under the WPCL." *Id.* (citing *De Asencio*, 342 F.3d at 309–10).

Casey argues that Plaintiff has not alleged the existence of a contract between Casey and Plaintiff. (Doc. 16 at 23–25). Plaintiff asserts that she has alleged the existence of an implied contract. (Doc. 20 at 20–21).

The court assesses Plaintiff's assertion of an implied contract against the following standard:

> A contract, implied in fact, is an actual contract which arises where the parties agree upon the obligations to be incurred, but their intention, instead of being expressed in words, is inferred from their acts in the light of the surrounding circumstances. An implied contract is an agreement which legitimately can be inferred from the intention of the parties as evidenced by the circumstances and the ordinary course of dealing and the common understanding of men.
>
> Generally, there is an implication of a promise to pay for valuable services rendered with the knowledge and approval of the recipient, in the absence of a showing to the contrary. A promise to pay the reasonable value of the service is implied where one performs for another, with the other's knowledge, a useful service of a character that is usually charged for, and the latter expresses no dissent or avails himself of the service. A promise to pay for services can, however, only be implied when they are rendered in such circumstances as authorized the party performing to entertain a reasonable expectation of their payment by the party benefited. The service or other benefit must not be given as a gratuity or without expectation of payment, and the person benefited must do something from which his promise to pay may be fairly inferred. When a person requests another to perform services, it is ordinarily inferred that he intends to pay for them, unless the circumstances indicate otherwise. However, where the circumstances evidence that one's work effort has been voluntarily given to another, an intention to pay therefor cannot be inferred.

*Stephan v. Waldron Elec. Heating & Cooling LLC*, 100 A.3d 660, 668–69 (Pa. Super. Ct. 2014) (internal quotations and citations omitted).

The court concludes that Plaintiff has set out factual allegations from which the existence of an implied contract between her and Casey can reasonably be inferred.  She has alleged that she was employed by the County in the Clerk of Courts office, that Casey supervised DiCasimirro, who supervised Plaintiff, and that Casey assigned Plaintiff duties such as driving Casey to and from work and delivering meals. (Id. ¶¶ 25, 31–32, 57). These are useful services of the character usually charged for. And the circumstances alleged—assignment of tasks by a supervisor in an employment context—do not indicate that these services were provided voluntarily. Plus, since Casey is alleged to have assigned them, it can also be inferred that she had knowledge of these services and availed herself of them. Though Plaintiff would likely have expected the County to compensate her, the nature of these services could also support an expectation that, if the County did not compensate her for them, Casey would.

Plaintiff has further alleged that she was not permitted to enter the time spent performing these services on her timesheet, (id. ¶¶225–26), which allegation allows the inference that she was not paid for these services. Based on these allegations, Plaintiff has stated a plausible claim against

Casey that Casey, as her employer, failed to pay her wages due, in violation of the WPCL. Count VIII will therefore be dismissed as against the County but not dismissed as against Casey.

### H. Count IX: Failure to Pay Wages: PMWA

Lastly, Plaintiff claims that Casey violated the Pennsylvania Minimum Wage Act, 43 Pa. Stat. §§333.101–333.115, (Doc. 13 ¶¶321–36), "by failing to properly pay Plaintiff for all hours worked." (Id. ¶329).

The PMWA provides that "[e]very employer shall pay to each of his or her employes for all hours worked" a specified minimum wage. 43 Pa. Stat. §333.104. An "employer" under the Act "includes any individual, partnership, association, corporation, business trust, or any person or group of persons acting, directly or indirectly, in the interest of an employer in relation to any employe." §333.103(g).

Casey argues that she is not an employer because "[t]he definition of an employer under the PMWA does not include an elected official or row officer." (Doc. 16 at 25). Plaintiff contends that her allegation is that "Casey, as an individual, hired Plaintiff to work a second job." (Doc. 20 at 23).

As discussed *supra* Section III.G, Plaintiff has made factual allegations from which an implied employment contract between her and Casey can be inferred. While the PMWA does not apply to political subdivisions, *see*

*McKinney v. Chester Cnty.*, No. 20-1756, 2021 WL 409975, at *5 (E.D. Pa. Feb. 5, 2021); *Morrow*, 2014 WL 348625, at *3, Plaintiff argues that Casey employed her as an individual. (Doc. 20 at 23). Because the services alleged, such as driving Casey to or from her home or delivering meals, were of a partly personal nature, and based on the allegation that Plaintiff was not permitted by the County to record her time spent performing these services, it could be inferred (alternatively) that Casey employed Plaintiff as an individual, rather than as Clerk of Courts. And Plaintiff has alleged that she was not paid at all for the services she performed for Casey. So she has stated a plausible claim against Casey for violation of the PMWA. Count IX will therefore not be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss will be granted in part and denied in part. Counts I, III, VI, and VII will be dismissed. Count VIII will be dismissed as to the County. An appropriate order follows.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: August 28, 2024**
23-245-01

- 36 -